UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:24-cv-00507-KDB

| | |
|---|---|
| DOMINIC A. LOWE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| EDDIE CATHEY, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review of Plaintiffs' Complaint [Doc. 1], filed under 42 U.S.C. § 1983, see 28 U.S.C. §§ 1915(e) and 1915A, and Plaintiffs' "Motion for Waiver of Filing Fees" [Doc. 4]. Plaintiff Dominic Lowe is proceeding in forma pauperis. [Docs. 2, 6].

**I. BACKGROUND**

On May 24, 2024, pro se Plaintiff Dominic A. Lowe ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 on behalf of himself, Eyan A. Moore, and Pedro Marcelino, who all appear to be detained at the Union County Jail (the "Jail") in Monroe, North Carolina.[1] [Doc. 1]. Plaintiff names Eddie Cathey, identified as the Sheriff of Union County; J. Dennis, identified as a Jail

---

[1] While the Complaint purports to be signed be each Plaintiff, it is apparent that Plaintiff Lowe forged the signatures of Plaintiffs Moore and Marcelino. [See Doc. 1 at 6]. Federal Rule of Civil Procedure 11(a) requires that pro se parties personally sign all pleadings filed with this Court. Fed. R. Civ. P. 11(a); see Davis v. Aldridge, No. 3:20-cv-00592, 2020 WL 5502306, at *1 (S.D. W.Va. Sept. 11, 2020). See also Ellis v. Werfel, 86 F.4th 1032 (4th Cir. 2023) (holding that the district court erroneously severed a multi-plaintiff pro so prisoner case under 28 U.S.C. § 1915(b)(1) and (2) where the prisoner plaintiffs paid the filing fee and all separately signed the complaint). The Court, therefore, will dismiss Moore and Marcelino as Plaintiffs in this matter and consider only those allegations that relate to Plaintiff Lowe. The Court notes that the allegations of the Complaint relative to dismissed Plaintiff's Moore and Marcelino fail to state any claim for relief in any event. [See Doc. 1 at 5-6].

Lieutenant; FNU Bailey, identified as a Jail Sergeant; and B. Christian, identified as a Union County Sheriff's Office Attorney. [Id. at 1]. Plaintiff sues Defendants in their individual and official capacities. [Id. at 4]. He alleges as follows.

At all relevant times, Plaintiff was proceeding pro se in several criminal matters pending in the District and Superior Courts of Union County. [Id. at 2]. On April 22, 2024, Plaintiff sent mail to "Lowe" with a "rough draft" of a witness statement that was to be copied, signed, and sent to the Clerk of Court of Union County. Plaintiff labeled the envelope "legal mail." Defendant Bailey confiscated the mail and gave it to Defendant Christian. [Id.]. On April 26, 2024, Plaintiff sent a letter and handwritten affidavit labeled "legal mail" to Aretta Matthews that was also intercepted by "UCSO personal [*sic*] and forwarded to the D.A." to gather evidence against Plaintiff in his criminal case. On April 29, 2024, Plaintiff sent mail to the "law office of Attorney Ezeh, Onyema," which was opened, read, and resealed with tape. [Id.]. On April 30, 2024, Defendant Bailey informed Plaintiff that his legal mail was being opened and "sent to the prosecution" in Plaintiff's criminal cases. [Id.].

Defendants have enacted an "arbitrary restriction" allowing them to return mail addressed to detainees that does not include the detainee's assigned five-digit number. [Id. at 3]. The Jail inmate handbooks do not reference this policy. [Id.]. "There is no due process for mail that is received and returned to sender, and the defendants have denied Plaintiff(s) due process rights." [Id.].

On March 8, 2024, Plaintiff "informed [Jail] staff" that he wanted to participate in Ramadan, the month-long Islamic fast from sunup to sundown. [Id. at 3]. Plaintiff has been a practicing Muslim for 20 years, and he had a "sincere desire" to practice his religion. [Id.]. "Defendants" told Plaintiff he would have to spend 30 days in segregation to participate in

Ramadan, which had no purpose but "to deter Plaintiff and like minded detainees from practicing the fast." [Id.]. Defendants Cathey, Bailey, and Dennis "have violated Plaintiff constitutional rights to Religious Freedom by restricting and placing unreasonable conditions on his request to practice his religion." [Id.]. Defendants have refused to give Plaintiff a copy of the policy allowing this action. [Id.].

Plaintiff claims Defendants Bailey and Dennis violated his rights under the First, Fourth, Sixth, and Fourteenth Amendments and that Defendants Cathey and Christian "authorized and sanction[ed] the illegal conduct of the other defendants."[2] [Id. at 2, 4]. Plaintiff seeks a preliminary and permanent injunction ordering Defendants "to cease the arbitrary requirements not described in policies" and generally asks the Court to allow him to receive mail through the United States Postal Service. [Id. at 4, 6]. Other than a request for a general declaration that the alleged acts violated Plaintiff's constitutional rights, Plaintiff seeks no relief relative to his religious practice allegations. [See id. at 4]. Plaintiff also seeks $500.00 "for all fees and cost[s] in preparation of this suit." [Id.].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915A.

---

[2] The Court will only address those claims fairly raised by Plaintiff's Complaint. Plaintiff's allegations do not implicate the Sixth, Fourth, or Fourteenth Amendments and those claims will be dismissed.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**III. DISCUSSION**

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law. See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. 166, 143 S.Ct. 1444 (2023).

    **A.    Interference with Mail**

Pretrial detainees have a limited First Amendment right to send and receive mail, but that right "may be restricted in the interest of prison security." See Hause v. Vaught, 993 F.2d 1079, 1081-82 (4th Cir. 1993); Thornburgh v. Abbott, 490 U.S. 401, 407 (1989). "[W]hen a prison regulation impinges on inmates' [or detainees'] constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Hause, 993 F.3d at 1082 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). For instance, prison officials may inspect an inmate's outgoing and incoming mail because such is reasonably related to legitimate penological interests. See generally Wolff v. McDonnell, 418 U.S. 539, 575 (1974); Turner, 482 U.S. at 89.

4

"[L]egal mail is widely recognized to be privileged and confidential — even in the context of prisons — which suggests that an incarcerated person's expectation of privacy in his legal mail is one 'that society is prepared to consider reasonable.'" Haze v. Harrison, 961 F.3d 654, 660 (4th Cir. 2020) (quoting United States v. Catellanos, 716 F.3d 828, 832 (4th Cir. 2013)); see King v. Rubenstein, 825 F.3d 206, 215 (4th Cir. 2016) ("[N]othing in Hudson indicates the Supreme Court intended to abrogate a prisoner's expectation of privacy beyond his cell."). As such, "policies concerning legal mail require heightened scrutiny, but isolated incidents of mishandling of mail does not state a claim." Barnes v. Wilson, 110 F.Supp.3d 624, 632 (D. Md. 2015).

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, the Court finds that he has failed to state a claim against any Defendant based on the alleged isolated incidents of mail mishandling. To be sure, Plaintiff alleges only that, on one occasion on April 22, 2024, Defendant Bailey confiscated mail addressed to "Lowe" labelled "legal mail" and gave it to Defendant Christian.[3] Moreover, while Plaintiff alleges that Defendant Bailey informed him on April 30, 2024, that Plaintiff's legal mail was being opened and "sent to the prosecution," this allegation is insufficient to ascribe such conduct to any particular defendant. Plaintiff's remaining allegations of mail mishandling are also not ascribed to any particular Defendant and using the term "staff" or the equivalent as a name for alleged defendants is insufficient to state a claim under § 1983. See Harden v. Green, 27 Fed. App'x 173, 178 (4th Cir. 2001)).

B. **Denial of Access to the Courts**

---

[3] While not determinative here, there is also a substantial question that mail Plaintiff sends to friends, family members, or other non-attorney, non-legal recipients would be considered "legal mail" pursuant to Jail policy. While Plaintiff alleges that he is proceeding pro se in his criminal matters, he also alleges having sent mail to an attorney and references "Plaintiffs attorney" in his Complaint. [See Doc. 1 at 2].

Plaintiff vaguely claims Defendants have violated his "right to court access." [Doc. 1 at 2]. The Supreme Court stated in <u>Bounds v. Smith</u>, 430 U.S. 817 (1977), that prisoners must have meaningful access to the courts. The "meaningful access" referred to in <u>Bounds</u> does not, however, entitle a plaintiff to total or unlimited access. <u>See</u> <u>Moore v. Gray</u>, No. 5:04-CT-918-FL, 2005 WL 3448047, at *1 (E.D.N.C. Jan. 26, 2005), *aff'd*, 133 Fed. App'x 913 (4th Cir. 2005) (unpublished) (citation omitted). The right of access to the courts only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 356-57 (1996). Moreover, as a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. <u>See</u> <u>id.</u> at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim challenging their conviction or conditions of confinement. <u>See</u> <u>id.</u> A plaintiff's "[f]ailure to show that a 'nonfrivolous legal claim has been frustrated' is fatal to his Bounds claim." <u>Alvarez v. Hill</u>, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (quoting <u>Casey</u>, 518 U.S. at 353).

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff has failed to state a First Amendment claim based on denial of access to the courts. That is, Plaintiff does not allege that Defendants' conduct has prevented him from bringing challenges to his sentences or conditions of confinement or that he has otherwise suffered any actual injury. The Court will dismiss this claim.

### C. Free Exercise of Religion

To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that: (1) he held a sincere religious belief and (2) that his religious practice has been substantially burdened by a prison policy or practice. <u>See</u> generally <u>Hernandez v. C.I.R.</u>, 490 U.S. 680, 699 (1989); <u>Greenhill v. Clarke</u>, 944 F.3d 243, 253 (4th Cir. 2019). A prison policy that

substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner, 482 U.S. at 89). "A substantial burden either puts pressure on a person to change his religious beliefs or puts that person to a choice between abandoning his religion or following his beliefs and losing some government benefit." Firewalker-Fields v. Lee, 58 F.4th 104, 114 (4th Cir. 2023) (citing Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006)). If that threshold showing is made, the prisoner must then show that the practice or regulation is not "reasonably related to legitimate penological interests." Id. (quoting Turner, 482 U.S. at 89).

Moreover, to establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants "acted personally" to cause the alleged violation. See Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted). As such, the doctrine of respondeat superior does not apply in actions brought under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A supervisor can only be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) there was an "affirmative causal link" between her inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, the Court finds that Plaintiff's free exercise claim against Defendants Bailey and Dennis passes initial review as not clearly frivolous. Plaintiff, however, has failed to state such a claim against Defendant Cathey. While Plaintiff generally alleges that Defendants Cathey, Bailey, and Dennis have violated his First Amendment right to practice his religion "by restricting and placing

7

unreasonable conditions on his request to practice his religion," Plaintiff specifically alleges, that his claims against Defendant Cathey are based on his "authoriz[ing] and sanction[ing] the illegal conduct of the other defendants." [Id. at 3-4]. This allegation is insufficient to state a claim against Defendant Cathey based on supervisory liability. The Court, therefore, will dismiss this claim.

### D. Official Capacity Claims

Plaintiff also purports to sue all Defendants in their official capacities. Suits against an officer in his official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099 (1985) (quoting Monell v Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 (1978)). The Office of Sheriff is not liable under § 1983 for an employee's acts "unless action pursuant to official municipal policy of some nature caused [the] constitutional tort." Collins v. City of Harker Heights, 503 U.S. 115, 120-21, 112 S.Ct. 1061, 1066 (quoting Monell, 436 U.S. at 691, 98 S.Ct. at 2036). That is, "[f]or a governmental entity to be liable under section 1983, the official policy must be the moving force of the constitutional violation." Moore v. City of Creedmoor, 345 N.C. 356, 366, 481 S.E.2d 14, 21 (1997) (internal quotation marks and citations omitted). "Thus, the entity's 'policy or custom' must have played a part in the violation of federal law." Id. (quoting Monell, 436 U.S. 658, 694, 98 S.Ct. at 2037-38).

Here, Plaintiff alleges that Defendants maintain an unconstitutional policy requiring incoming mail to include the recipient detainee's assigned Jail number. There is nothing unconstitutional about this policy, which is common practice among penal institutions whether stated in the inmate handbook or not. It is not uncommon for inmates to share the same name or for inmates to be released before incoming mail reaches them. Requiring inmates' numbers to be listed on the envelope ensures mail is delivered to the correct inmate. Plaintiff does not allege that

8

any other Jail policies are the moving force behind any other alleged constitutional violation. While Plaintiff alleges that Defendants "refused to give copies of the policies governing [their alleged requirement that Plaintiff spend 30 days in segregation to practice Ramadan]," he does not allege that Defendants acted pursuant to any such Jail policy. The Court, therefore, will dismiss Plaintiff's official capacity claims.

Plaintiff also moves for a "complete waiver of all filing fees" in this matter. [Doc. 4]. As grounds, Plaintiff argues he has no monthly income and no opportunity for employment at the Jail. [Id.]. The Court will deny this motion as moot. The Clerk has already waived the partial filing fee and ordered that Plaintiff shall pay the fee over time through the Jail's transmittance of 20% of the deposits made into Plaintiff's Jail trust account each month. [Doc. 6 at 2]. Plaintiff has not stated any grounds supporting a deviation from this standard order.

### IV. CONCLUSION

In sum, the Complaint passes initial review under 28 U.S.C. §§ 1915A and 1915(e) in accordance with the terms of this Order.

### ORDER

**IT IS, THEREFORE, ORDERED** that all claims asserted in this matter as to all Defendants are hereby **DISMISSED** for failure to state a claim, except for Plaintiff's First Amendment free exercise claim against Defendants Dennis and Bailey in their individual capacities, which is allowed to pass initial review.

**IT IS FURTHER ORDERED** that Eyan A. Moore and Pedro Marcelino are **DISMISSED** as Plaintiffs in this matter.

**IT IS FURTHER ORDERED** that Defendants Cathey and Christian are hereby **DISMISSED** as Defendants in this matter.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Waiver of Filing Fees [Doc. 4] is **DENIED**.

The Clerk is respectfully instructed to mail two (2) blank summonses to Plaintiff to fill out and identify Defendants Dennis, and Bailey, and then return the summonses to the Court. Plaintiff is required to provide the necessary information for the U.S. Marshal to timely effectuate service on these Defendants. When the Court receives the summonses from Plaintiff, the Clerk shall direct the U.S. Marshal to effectuate service upon the Defendants.

**IT IS SO ORDERED**.

Signed: June 13, 2024

*[signature]*

Kenneth D. Bell
United States District Judge